## McCall's Estate.

*Contracts—Attorney and client—Contingent fees—Liability of partner under agreement of attorney with firm—Compromise agreements—Ratification—Theory of case — Creation of fund — Good faith—Agreement to arbitrate—Findings of fact—Appeal.*

1. A contract, whereby the liquidator of a firm retains counsel to prosecute a claim for the liquidator and the firm, imposes no liability for the payment of attorneys' fees upon the individual partners, where it is shown that the recovery was had on behalf of the individual partners, and that the efforts to recover on behalf of the liquidator and the firm had been fruitless.

2. A tentative agreement of compromise, not consummated, leaves the parties where they were before its execution, and cannot be used against either party in the litigation which it was intended to prevent.

3. E. M., an American citizen, was a member of the international banking firm of A. & Co., a juridical entity under the laws of Chile. After his death the firm went into liquidation. The liquidator contracted with B., an attorney, afterwards associated with P., to represent "him" and "said firm" in the prosecution of a claim against Chile and Bolivia, and agreed to pay, as counsel fees, a stipulated percentage upon the amount "recovered for me or said firm." The liquidator subsequently died. Thereafter B. and P. presented the claim to a commission created by the United States and Chile for the consideration of claims of the citizens of each country against the other. The commission rejected the claim because A. & Co., the claimant, being a Chilean citizen, its rights were not comprehended by the terms of the submission, which embraced only corporations, companies, or individuals, citizens of the

United States. Subsequently the heirs of E. M., who were ignorant of the contract between the liquidator and B. and P. retained their own counsel. The claim was afterwards submitted to the King of England for arbitration, being presented not on behalf of A. & Co., or its surviving member, but on behalf of certain designated American citizens, including E. M., their "heirs, assigns, representatives and devisees." An award was made by the king in favor of the American claimants which was paid by Chile to the secretary of state for distribution. Certain questions having arisen, an agreement of compromise was entered into by some of the parties, including the heirs of E. M., containing a provision for the payment of a specified percentage to B. and P., as attorneys' fees. This agreement was annulled by a subsequent agreement which submitted all such questions to the secretary of state for arbitration. The secretary refused to act, and the respective interests of the claimants were paid over by the United States government to representatives of their estates for distribution. B. and P. presented to the representative of E. M. a claim for attorneys' fees at the rate specified in their contract with the liquidator, based upon the amount awarded to the heirs of E. M. The representative of E. M. refused payment of this claim. *Held:* (1) That the contract of retainer imposed no liability on the estate of E. M., which had employed independent counsel; (2) that neither the compromise agreement nor the agreement of arbitration constituted a ratification or confirmation by E. M.'s estate of the employment of B. and P. or recognition of their claims, but merely a recognition that it was to the mutual advantage of,everyone concerned to have all demands upon the fund disposed of, if possible by the secretary of state, rather than to have them litigated elsewhere.

4. In such a case, whether or not anything contained in the writings was intended as a recognition of the validity of the claim of B. and P. was really a question of fact, decided against the claimants by the court below, which the appellate court has no warrant to disturb.

5. Instances may be found where a particular provision in the contract itself causes a liability for attorney fees to continue against him who takes any part of the fund eventually realized; or where the demand from which the fund arises really remains with, and, in the end, is recovered by the original claimant, or his direct representative, and, for that reason, the liability to pay attorney fees continues; or where the party to whom the claim eventually passes so recognizes and accepts the services of the attorney, originally retained, as to create a liability on his part for the latter's fees. But the principles there involved do not apply to this

case, where it was necessary to abandon the original claimant and substitute others in its place before recovery of any part of the fund now for distribution could be secured, and where, until this was done, success did not accrue.

6. It is too late in such a case to contend that no distinction should be made between the artificial personality of A. & Co. and the American partners who composed that firm, or the latter's American "heirs, assigns, representatives and devisees," inasmuch as the record shows that the success of the recovery by the United States government rested upon this very distinction, and that the failure to insist upon such a distinction accounted for the lack of success when the claim was pressed by B. and P. before the Chilean commission. After obtaining the award, which created the fund, by taking a certain stand before the international tribunal, it would be a breach of good faith to ignore or depart, in any manner or degree, from the basic grounds upon which such recovery was had.

Argued Jan. 7, 1920. Appeals, Nos. 33, 34 and 35, Jan. T., 1920, by H. A. McCarthy, ancillary adm'r of estates of Geo. S. Boutwell and Nathaniel A. Prentiss, and the Commercial Trust Co., ancillary administrator d. b. n. c. t. a. of estate of Edward McCall, deceased, from decree of O. C. Phila. Co., Jan. T., 1893, No. 278, dismissing exceptions in estate of Anne McCall, deceased. Before MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Exceptions to adjudication of GEST, J.

The court, in an opinion by HENDERSON, J., dismissed the exceptions: see 28 Pa. Dist. R. 433. The exceptants, as above named, appealed.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the adjudication.

*Joseph S. Clark,* for appellants.—It is the duty of the trustee to protect the trust estate for the beneficiaries

and he has the right for that purpose to employ attorneys and to charge the trust estate with reasonable fees: Manderson's App., 113 Pa. 631; Weed's Est., 163 Pa. 595; International Imp. Fund v. Greenough, 105 U. S. 527; Price's App., 116 Pa. 410; Bosler's Est., 161 Pa. 457.

The death of a client prior to the termination of a suit does not affect the right of an attorney to collect fees contingent upon success in that suit: Wylie v. Coxe, 56 U. S. 414; McGowan v. Parish, 237 U. S. 286.

*Charles Sinkler,* with him *James M. Brittain,* for appellee.—Prentiss and Boutwell had a contract with the liquidator of Alsop & Co. which was a legal entity, separate and distinct from the partners composing the firm, and this contract was binding, if at all, only on the firm and not on the partners individually.

The death of Henry S. Prevost, successor liquidator of Alsop & Co., terminated the relation of attorney and client between himself or the firm on the one hand, and Prentiss and Boutwell on the other: Baker's Est., 150 Pac. 989; Giles v. Eaton, 54 Maine 186; Lapaugh v. Wilson, 43 Hun (N. Y.) 619.

It being evident, through the dismissal of the claim in 1901 by the Revived Chilean Claims Commission, that the claim belonging to the partners must thereafter be presented in behalf of those individuals, each of them was at liberty, either to retain Prentiss as his counsel, or to retain another attorney. Prentiss not having obtained authority to act for the McCall estate, which retained its own attorney, he was without any authority whatsoever to appear for the McCall estate in the final intervention.

OPINION BY MR. JUSTICE MOSCHZISKER, February 23, 1920:

Edward McCall, a citizen of the United States, residing at Lima, Peru, was a member of the international

banking firm of Alsop & Co., a Chilean concern; he died at his South American home in 1874. Alsop & Co. went into liquidation, and, in 1876, John Wheelwright, its liquidator, looking towards the collection of a debt due by Bolivia to the Alsop firm, made a contract with that country; but war ensued between Chile and Bolivia, and acts of the former prevented payment by the latter. In 1885, Wheelwright contracted with George S. Boutwell, Esq., to represent "him" and "said firm" in the prosecution of the claim of Alsop & Co. against Chile and Bolivia; he agreed to pay, as counsel fees, a stipulated percentage upon the amount "recovered for me or said firm," and an effort to have part of these fees charged against the American heirs of Edward McCall gave rise to the present litigation.

Nathaniel A. Prentiss, Esq., became associated with Boutwell, they together representing Alsop & Co., or its liquidator; Wheelwright died and Henry S. Prevost succeeded him in office. Thereafter, in 1893, the United States of America and Chile created a joint commission for the consideration of claims of the citizens of each country against the other country, but the life of this body expired before it took action on the Alsop claim; in 1900, the commission was revived, and Messrs. Boutwell and Prentiss again presented that demand, but it was rejected because Alsop & Co. was "a Chilean juridical person," and, possessing such nationality, its rights as a claimant against Chile were not comprehended by the terms of the submission, which in this respect embraced only corporations, companies, or individuals, citizens of the United States.

Prevost died in 1904, and no succeeding liquidator was appointed. Subsequently a treaty of peace was entered into between Chile and Bolivia, whereby the former appropriated a considerable sum of money to pay several specified demands against the latter, including that of Alsop & Co.

In the meantime, the Alsop claim was being pressed

upon the attention of the American State Department, not only by Messrs. Boutwell and Prentiss, but by other —independent—counsel representing the estate of Anne McCall, who had succeeded to the interest of Edward Mc-Call, deceased; and, eventually, the whole matter was submitted to King Edward VII of England, for arbitration, a protocol to that end having been concluded December, 1909, by the United States and Chile.

On the death of King Edward his place was taken by George V. This time, however, although one of the partners still lived, the demand was not presented, as before, on behalf of the Alsop firm, or of its surviving member, but was made for the several individual partners, nominatim, including Edward McCall, their "heirs, assigns, representatives and devisees." In other words, instead of putting the claim in for a Chilean entity, it was entered on behalf of certain designated American citizens.

King George made an award, in 1911, favoring the American claimants, and shortly thereafter Chile paid the amount involved to the United States government, which created a national fund for distribution by the Department of State.

There had been eleven terms, or periods, during the course of the career of Alsop & Co., each term representing a renewal of the partnership and, often, a change in the personnel of the firm. On August 16, 1912, Secretary Knox formulated an order awarding the fund on hand to the estates of the partners of Term No. 9—among others, the estate of Edward McCall, deceased; but, immediately after this, the attorneys for George McCall, executor of Anne McCall, convinced the secretary (by proofs showing the devolution of title from Edward Mc-Call to his sister Anne, and that the former's estate had long since been administered and distributed) that the McCall award should be paid to the executor of Anne McCall. George McCall filed a bond, as executor, and the secretary of state issued a certificate in his favor; where-

upon so much of the fund as had originally been ordered to be paid the estate of Edward McCall was given to the executor of Anne McCall.

The secretary of state, in making his award, held that, under the Act of Congress of February 27, 1896 (29 Statutes at Large 32), he could recognize only the primary claimants to the fund and lacked jurisdiction to consider derivative claims, such as the one for counsel fees here involved, presented by Nathaniel A. Prentiss, Esq., on behalf of himself and George S. Boutwell, then deceased; but the secretary expressly said that this was "without prejudice to such proceedings, if any, as those making the claim may see fit to bring in the appropriate tribunals for the enforcement of the rights of which they may consider themselves possessed."

George McCall filed an account as executor of Anne McCall, deceased, charging himself with the money received from the United States government, and claiming certain credits, with which we are not now concerned. Shortly thereafter Nathaniel A. Prentiss died, and N. A. McCarthy, as ancillary administrator of both Boutwell and Prentiss, brought forward the claim of his decedents for counsel fees, which he alleged to be due them by the McCall estates, for services rendered under the original contract with the liquidator of Alsop & Co.

The court below decided to hear and adjudge the claim at the audit of the executor's account, in the Anne McCall estate, and no question of jurisdiction is now raised in that regard, although the Commercial Trust Co., as ancillary administrator d. b. n. c. t. a. of the estate of Edward McCall, appears as an appellant; but appellant McCarthy, representing the estates of Messrs. Boutwell and Prentiss, contends that the court erred in refusing to allow the counsel fees asked for his decedents.

It appears that Prevost, when he succeeded Wheelwright as liquidator of Alsop & Co., confirmed the agreement retaining Boutwell and Prentiss as attorneys, but,

after the decease of Prevost, in 1904, these attorneys were not retained by anyone representing either the estates of Edward or Anne McCall. In this connection, the auditing judge (GEST) properly says: "When the protocol of submission was made between Chile and the United States, by which the determination of the amounts equitably due to the individual partners of Alsop & Co. was referred to King Edward VII, the case assumed a radically different position, and the estates of Boutwell and Prentiss, in order to maintain their claim against the estate of Edward McCall, should show some contractual obligation on the part of the latter or its representatives. In the diplomatic intervention made by the United States against Chile, in consequence of which the protocol was executed, the distinction between the firm as a legal entity and the partners composing it appears clearly in every phase of the proceedings. Neither Wheelwright nor Prevost assumed in the slightest degree to contract in behalf of, or to bind, the individuals who were or had been members of the firm. This is far from being an academic or technical distinction; the liquidator of the firm of Alsop & Co. was acting in behalf of an entity entirely distinct in every legal aspect from the individuals who were partners, and any asset which might have been recovered by such liquidator probably would have been subject to claims, liens or other rights, radically distinct from those growing out of the interests of the individuals......The claim of Boutwell and Prentiss......is put clearly upon a contractual basis, and their estates must recover on that basis or not at all." The orphans' court then decided that, since the McCalls had employed independent counsel to represent them, and Boutwell and Prentiss, although representing several other interests, had shown no contract of retainer with either of the McCall estates, their claim for counsel fees could not be allowed against the latter; and this is the matter of complaint which we have to adjudge.

We are not convinced of error in the conclusion reached by the court below, and see nothing in the original contract of retainer, nor in the subsequent facts, which obligates the McCall estates, or either of them, to pay the Boutwell-Prentiss fees. Our attention is directed to two documents which mention the fees in controversy; but, as stated by the learned auditing judge, the first of these so-called agreements was never consummated, several of the parties in interest having failed to sign, and the second is nothing more nor less than "a submission to arbitration by the secretary of state of numerous disputed claims," among others that of Boutwell and Prentiss. The secretary having refused to assume such arbitration, "the agreement," in the words of Judge GEST, "proved futile and cannot in the present litigation be regarded as in any way a ratification or confirmation by George McCall of the employment of Boutwell and Prentiss, or a recognition of their claim...... A tentative agreement of compromise, not consummated, leaves the parties where they were before its execution, and never can be used against either party in the litigation which it was intended to prevent."

No point as to the amount of the Boutwell and Prentiss fees being involved, it is contended by appellants the writings were not compromise agreements in that regard; but apparently a question always existed, so far as the McCall estates are concerned, as to whether or not either of them owed anything at all on account of these fees. We think, under the circumstances, the documents relied upon were properly held by the court below to be in the nature of compromise agreements, which could not legally be given the effect claimed for them by appellants; they were not necessarily an acknowledgment of either the legality or justice of the claim for attorneys' fees mentioned therein, but merely a recognition that it was to the mutual advantage of everyone concerned to have all demands upon the fund disposed of, if possible, by the secretary of state, rather than to have

them litigated elsewhere. The alleged recognition of the Boutwell-Prentiss demand was only to that extent, and must be so confined; but, after all is said, whether or not anything contained in the writings was intended as a recognition of the validity of a particular claim, is really a question of fact, decided against appellants by the court below, which we have no warrant to disturb.

Instances may be found where a special provision in the contract itself causes a liability for attorney fees to continue against him who takes any part of the fund eventually realized; or where the demand from which the fund arises really remains with, and, in the end, is recoverable by the original claimant, or his direct representative, and, for that reason, the liability to pay attorney fees continues; or where the party to whom the claim eventually passes so recognizes and accepts the services of the attorney originally retained, as to create a liability on the former's part for the latter's fees. Some such authorities have been cited; but all of them are distinguishable on their facts from the case now before us, where it was necessary to abandon the original claimant, Alsop & Co. (the client of the attorneys whose fees are here in controversy), and substitute others in its place, ere recovery of any part of the fund now for distribution could be hoped for, and where, until this was done, success did not accrue.

It is too late to contend, as counsel for appellants attempt to do, that no distinction should be made between the artificial personality of Alsop & Co. and the American partners who composed that firm, or the latter's American "heirs, assigns, representatives, and devisees"; for the voluminous record of the international proceedings undertaken and carried through by the United States shows that the success of our government's efforts rests upon this very distinction, and also that the failure to insist upon such a distinction accounts for the lack of success when the claim was pressed by Boutwell and Prentiss, in 1901, before the Revised Chilean Claims

Commission. After obtaining the award which created the fund, by taking a certain stand before the international tribunal, it would be a breach of good faith in any manner or degree to ignore or depart from the basic grounds upon which such recovery was had.

Judge HENDERSON, speaking for the court below in banc, well summarizes the phases of the case which are now before us, thus: "The previous attempt to recover ......for the account of the Chilean entity, Alsop & Co., failed because Chile refused to recognize the right of the United States to intervene for any but her own citizens......The balance shown by the account is a national fund donated by Congress to the heirs and representatives of Edward McCall; [but the same persons] take the fund, in the same proportions, whether derived through Edward or Anne McCall. The account is filed by the estate of Anne McCall [and, the United States government having paid the fund to that estate, it can] properly be distributed [in the present proceeding]. ......Neither Prentiss nor Boutwell were employed by, or even known to, the McCall executor; hence they have, and make, no claim to recover on a quantum meruit, and they cannot now recover, against the McCalls, on the original contract of retainer, which Boutwell made with the liquidator of Alsop & Co."

After studying this record, we join the auditing judge in saying that "no case has been contested before us by counsel with greater industry, learning and ability than the present"; we may add that these efficient professional services, and the painstaking work of the learned court below, have considerably facilitated our labors on review.

The assignments of error which go to the several points discussed in this opinion, are overruled; the others are dismissed, as unimportant, and the decree is affirmed at cost of appellants.